# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Jodi Tiahrt,<br><br>　　Plaintiff<br><br>v.<br><br>Aria Resort & Casino, LLC, et al.,<br><br>　　Defendants | Case No.: 2:22-cv-02017-JAD-NJK<br><br>**Order Denying Motion to Remand, Granting Motion to Dismiss Without Prejudice, and Dismissing Case**<br><br>[ECF Nos. 8, 16] |

　　Part-time cocktail server Jodi Tiahrt sues her longtime employer Aria Resort & Casino and several of its employees (collectively, "Aria") for violating company policies by allowing new employees to choose shifts before her and by creating a hostile work environment. Though Tiahrt brought her breach-of-contract, bad-faith, and declaratory-relief claims in state court, Aria removed them to federal court and now moves to dismiss them on the ground that they are covered by Section 301 of the Labor Management Relations Act (LMRA), which completely preempts "suits for violations of contracts between an employer and a labor organization."[1] After amending her complaint to remove references to the relevant union contract, Tiahrt seeks remand and opposes the motion to dismiss, arguing that her claims are based on policies that are distinct from the union contract.

　　Because Tiahrt's job is covered by the union contract and her claims are based on rights conferred by—and require interpretation of—that contract, her claims are completely preempted by the LMRA, subject-matter jurisdiction is proper, and her state-law causes of action aren't permitted. So I deny Tiahrt's motion to remand and grant Aria's motion to dismiss without prejudice to Tiahrt's ability to pursue available remedies under the LMRA.

---

[1] 29 U.S.C. § 185(a).

**Background**

Tiahrt works as a part-time cocktail server for Aria, a position that she has held for nearly a decade.[2] A longstanding Aria policy states that part-time cocktail servers "accept varied shifts with varied days off" but that servers "choose their shifts and days" based on their current rank on a rotating list of priority.[3] That rank rotates each week so that the server at the top of the list picks first one week; the next week, that server goes to the back of the line and the next-in-line server gets first pick; and so on.[4] The policy also states that "[a]ll new hires will go to the bottom of [this] list"[5] and, as a result of this policy, "[i]t takes weeks/months . . . to climb the rotation list" and "those on the bottom do not get shifts/work."[6]

In September 2022, Tiahrt noticed that two new hires sat above her on the list, so she reached out to an Aria representative, who explained that the new hires "were put above [her]" because she "took vacation time."[7] Tiahrt then raised the issue with her supervisor, who revised the list by placing the new hires in a group together above Tiahrt and some of her senior colleagues.[8] The supervisor told Tiahrt that he wanted the new hires grouped together and that placing new hires at the "'bottom of the list' can mean different things."[9] Tiahrt alleges that the change in how Aria administers the rotation system is due to another supervisor's desire to

---

[2] ECF No. 6 at ¶¶ 21–22.
[3] *Id.* at ¶¶ 23, 25.
[4] ECF No. 17 at 5–6.
[5] ECF No. 6 at ¶ 7 (emphasis removed).
[6] *Id.* at ¶ 23.
[7] *Id.* at ¶ 24.
[8] *Id.*
[9] *Id.*

replace more senior servers with his friends.[10] That supervisor, according to Tiahrt, also "flaunt[s] the fact that he is dating other employees" and "verbally abus[es]" other employees—acts that "violate[] Aria policies and procedures."[11]

Aria's employees are represented by multiple unions, which entered into a collective bargaining agreement with Aria in 2018.[12] Though Tiahrt is not a member of the union, she does not dispute that the union contract covers part-time cocktail waitresses like her. That contract states that "[n]o employee covered by this [a]greement shall be compelled or allowed to enter into any individual contract or agreement with [Aria] concerning conditions of employment."[13] The contract also states that Aria "may establish and administer reasonable rules, regulations[,] and procedures" that "are subject to the grievance procedure" of the contract.[14] And it covers a wide-range of other topics, including seniority and scheduling for part-time employees.[15]

---

[10] *Id.* at ¶ 29.

[11] *Id.*

[12] ECF No. 21-3 at 8. Though the amended complaint does not reference the union contract, I find that it "forms the basis of plaintiff's claim[s,]" so I consider it. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[13] *Id.* at 10.

[14] *Id.* at 69.

[15] *Id.* at 23, 55.

**Discussion**

**I. This court has subject-matter jurisdiction because the LMRA completely preempts all of Tiahrt's claims.**[16]

**A. The LMRA completely preempts state-law claims that involve rights conferred by, or require interpretation of, a collective-bargaining agreement.**

"A defendant may remove an action to federal court based on federal[-]question jurisdiction or diversity jurisdiction."[17] Under the well-pleaded-complaint doctrine, federal-question jurisdiction generally arises only if the complaint "affirmatively allege[s] a federal claim[,]"[18] and "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre[]emption."[19] One exception or "corollary" to the well-pleaded-complaint rule is the complete-preemption doctrine.[20] It comes into play when "a federal statute's preemptive force is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim" so that "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under

---

[16] Even if this court lacks jurisdiction over some of the claims, it can exercise supplemental jurisdiction over the other claims because they "derive from a common nucleus of operative fact." *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021). Indeed, the bad-faith claim is a near carbon copy of the contract claim, and the injunctive-relief claim (which isn't truly a separate cause of action but rather a remedy) seeks relief for Aria's alleged violation of its duties under the contract.

[17] *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

[18] *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)).

[19] *Id.* (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

[20] *Garcia v. Serv. Emps. Int'l Union*, 993 F.3d 757, 762 (9th Cir. 2021).

federal law."[21]  The LMRA is "one of just three federal statutes that the Supreme Court has held to 'so preempt their respective fields as to authorize removal of [state-law] actions.'"[22]

"To determine whether a state-law claim is preempted and removable" under the LMRA, courts "employ a two-step analysis:" The court first "determine[s] whether the cause of action involves a right conferred by state law" or "by a labor contract."[23]  "If the labor contract alone creates the right, the claim is preempted and the analysis ends."[24]  If not, and "the right underlying the state[-]law claim 'exists independently[,]'" the court must then move to the second step of the analysis and "determine whether the right is . . . 'substantially dependent on analysis' of a labor contract."[25]  The right is substantially dependent if "the need to interpret the contract . . . inhere[s] in the nature of the plaintiff's claims."[26]  This requires more than a need to consult the labor contract; "the meaning of the contract terms" must be "the subject of dispute."[27]  If "there is substantial dependence, the state[-]law claim is preempted by [the LMRA], and that claim must either be treated as [an LMRA] claim or dismissed."[28]

---

[21] *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 747 (9th Cir. 2022) (quoting *Caterpillar*, 482 U.S. at 393).
[22] *Garcia*, 993 F.3d at 762 (quoting *In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005)).
[23] *Id.*
[24] *Id.*
[25] *Id.* (citation omitted).
[26] *Id.* (cleaned up).
[27] *Id.* (cleaned up).
[28] *Id.* (cleaned up).

### B. Tiahrt's breach-of-contract claim is preempted by the LMRA because the union contract covers her job position.

Tiahrt argues (and her complaint pleads) that her claims are not preempted because the shift-rotation and anti-discrimination policies that Aria allegedly violated are "separate and apart from" the union contract.[29] But, as Aria argues,[30] the Ninth Circuit has repeatedly rejected employees' attempts to bring state-law breach-of-contract claims based on purportedly separate agreements when a union contract covers the employee's position.[31] In *Chmiel v. Beverly Wilshire Hotel Co.*, for example, an employee who was fired without cause alleged that his "employer, independently of the collective bargaining agreement . . . agreed that he would not be involuntarily terminated except upon a showing of good cause."[32] The employee sued for breach of contract, and the Ninth Circuit held that his claim was preempted by the LMRA,[33] reasoning

---

[29] ECF No. 6 at ¶ 25; ECF No. 8 at 2.

[30] ECF No. 15 at 9.

[31] For this reason, Tiahrt's reliance on cases outside of the Ninth Circuit is unpersuasive. ECF No. 8 at 8. One case acknowledges that "[c]ourts nationwide have taken differing approaches and reach divergent conclusions when considering . . . whether the LMRA preempts [breach-of-contract] claims based on . . . workplace policies." *Pellot v. GGB LLC*, 551 F. Supp. 3d 509, 515 (D.N.J. 2021). Another case relies on the Supreme Court's holding in *Caterpillar* "that the exception to the well-pleaded complaint rule does not apply to breaches of individual employment contracts." *Bowler v. Alliedbarton Sec. Servs., LLC*, 123 F. Supp. 3d 1152, 1157 (E.D. Mo. 2015) (citing *Caterpillar*, 482 U.S. at 393). But the Ninth Circuit has explained that *Caterpillar* involved a job not covered by the union contract, *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 998 (9th Cir. 1987), which is not true here.

[32] *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1285 (9th Cir. 1989).

[33] To be sure, the *Chmiel* court also relied on the fact that the "independent agreement" in *Chmiel* was "inconsistent with the express terms of the collective bargaining agreement[,]" which might not be true here. *Chmiel*, 873 F.2d at 1285. But the union contract in *Chmiel* stated that "no employee covered by this agreement shall be allowed to enter into any individual contract or agreement with the employer *varying* the conditions of employment contained in the collective bargaining agreement[,]" *id.* at 1286, whereas the contract here bars all side agreements "*concerning* conditions of employment."[33] So whether Aria's policies and procedures vary—rather than merely concern—the union contract is of no moment here.

that the claim "concern[ed] a job position governed by the collective bargaining agreement."[34] Tiahrt does not dispute that the union contract covers part-time cocktail waitresses like her, so her contract claim is preempted at the first step of the preemption analysis.[35]

Even if her claim involved a right conferred by state law and I proceeded to the second step of the LMRA preemption analysis, the bulk of her claim would still be preempted.[36] The union contract allows Aria to "establish and administer reasonable rules, regulations[,] and procedures governing the conduct of employees."[37] The dispute here centers on that very provision because the parties disagree on whether Aria's procedures are fair and reasonable.[38]

---

[34] *Id.* at 1287. The court also held that the employee's age-discrimination claim was not preempted because the state's "age[-]discrimination statute creates a mandatory and independent state right [that] is not preempted by [the LMRA]." *Id.* Though Tiahrt alleges discrimination, those allegations form part of her contract and bad-faith claims, not a separate claim under a state discrimination statute, so Tiahrt's reliance on *Jordan v. Equity Grp. Eufaula Div., LLC* is misplaced. *See* 2008 WL 4671781, at *4 (M.D. Ala. Oct. 21, 2008) (holding that "[p]laintiff's outrage claim is not 'inextricably intertwined' with the [collective bargaining agreement] because it alleges conduct 'so outrageous' that it is obvious without reference to the agreement" and that "[p]laintiff does not allege a violation of the [collective bargaining agreement] but specifically pleads that [d]efendants' conduct violated the public policy of Alabama").

[35] In her opposition to Aria's motion to dismiss, Tiahrt cites two cases in the Ninth Circuit for the proposition that "[p]ersonnel manuals, guides, or rules are one widely accepted means of modifying the at-will contract." ECF No. 21 at 9 (citing *Hutton v. Gen. Motors Corp.*, 775 F. Supp. 1373, 1375 (D. Nev. 1991); *Kuhn v. Lockheed Aeromed Ctr., Inc.*, 134 F.3d 378 (9th Cir. 1998)). But those cases do not involve union contracts and so do not apply here.

[36] Unlike the shift-rotation allegations, the discrimination allegations do not require an interpretation of whether the policies and procedures are reasonable. Nonetheless, both sets of allegations are preempted at the first step of the analysis because Tiahrt's position is covered by the union contract.

[37] ECF No. 21-3 at 62.

[38] Tiahrt argues that she is not "contending [that] policies and procedures are unreasonable" and that "[o]n the contrary[,]" she contends that the policy is "reasonable (and fair) and that is why it should be administered and enforced." ECF No. 17 at 8. But how Aria assigns shifts—whether written or not and whether consistent with the written policy that Tiahrt cites or not—is a policy. And how Aria administers and enforces the policy she cites—which she certainly contests—is a procedure. Tiahrt appears to acknowledge this fact in her opposition to the dismissal motion. *See* ECF No 21 at 17–18 (characterizing how Aria "put[s] new hires/transfers in the middle or at

Also, Aria points to several provisions of the union contract that appear to be relevant to policies that underlie Tiahrt's claim, including provisions related to seniority and scheduling for part-time employees.[39] Though Tiahrt contests that fact in her briefing, her original complaint—which appears to be substantively the same as her amended complaint—relies heavily on provisions in the CBA.[40] So her contract-breach claim is substantially dependent on the CBA and is thus preempted at both steps of the analysis.[41]

### C. Tiahrt's other claims are also preempted because they depend on her contract rights.

Tiahrt's other two causes of action—her bad-faith claim and request for injunctive relief—are likewise preempted. Tiahrt alleges that Aria "owed a duty of good faith" and "unfairly interfered in bad faith with [her] right to receive the benefits of her employment contract."[42] She also "seeks an injunction requiring [Aria] to follow [its] policies and

---

the top of the [r]otation [l]ist" as a "change in policy and procedure"). Whether that procedure (or any unwritten policy) is reasonable depends on an interpretation of the union contract.

[39] ECF No. 15 at 4–5.

[40] *See, e.g.*, ECF No. 1-1 at ¶¶ 26, 27, 29; *see also Young*, 830 F.2d at 997 ("The district court . . . properly looked beyond the face of the complaint to determine whether the contract claim was in fact [an LMRA] claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction."); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment . . . . The court need not presume the truthfulness of the plaintiff's allegations.").

[41] *Cf. Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1035 (9th Cir. 2016) ("Assuming without deciding that [Oregon law] independently confer[s] upon [the plaintiff employee] the right to receive premium pay for extra shifts worked, that right is substantially dependent on an analysis of the terms of the [collective bargaining agreement]" because "a court must consult the [CBA]" to determine the meaning of a term in dispute). This fact also makes Tiahrt's reliance on *Grimm v. U.S. W. Commc'ns, Inc.* inapposite. 2000 WL 35742427, at *2 (S.D. Iowa Jan. 5, 2000) ("[T]he handbook does not require interpretation of the [union contract] to determine its relevant provisions.").

[42] ECF No. 11 at ¶ 44.

procedures" that are the subject of her contract and bad-faith claims.[43] In Nevada, "all contracts impose upon the parties an implied covenant of good faith and fair dealing," and a breach of the covenant requires a breach of a duty in the contract.[44] So Tiahrt's right to be dealt with in good faith is conferred by her contract with Aria (the union contract), and thus her bad-faith claim is preempted for the same reasons as her contract-breach claim.[45] And because her right to injunctive relief similarly depends on her rights under the union contract and would require an interpretation of it, her injunctive-relief request is also preempted. So this court has subject-matter jurisdiction over all three claims alleged in her complaint.

## II. Tiahrt's claims are dismissed as preempted without prejudice to her ability to bring suit under the LMRA.

Because Tiahrt's claims are preempted by the LMRA, they "must either be treated as [an LMRA] claim or dismissed."[46] Tiahrt argues that there "are material issues of fact" and so discovery should be allowed on whether "the rotation policy and procedure was signed . . . by [Tiahrt]" or was "part of [her] employment[,]" whether "the rotation policy and procedure is . . . a contract[,]" and "if Aria ever notified [Tiahrt] of [the] change" to how Aria administered the policy.[47] But these facts are immaterial in light of the fact that the Ninth Circuit has held that

---

[43] ECF No. 6 at ¶ 55.

[44] *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007) (holding that the implied covenant of good faith and fair dealing "prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other" and that, because a party "bore no contractual duty to disclose the water damage, [that party's] omission did not constitute an arbitrary or unfair act that worked to [the other party's] disadvantage").

[45] *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218 (1985) (holding that a similar bad-faith claim was preempted "[b]ecause the right asserted not only derives from the contract[] but is defined by the contractual obligation of good faith" and "any attempt to assess liability here inevitably will involve contract interpretation").

[46] *Id.* (cleaned up).

[47] ECF No. 21 at 17–18.

9

contract claims are preempted when, as undisputed here, the employee's job is covered by the union contract. So I dismiss Tiahrt's complaint without prejudice to her ability to pursue relief according to the procedures in the union contract or as LMRA claims in a new suit.[48]

**Conclusion**

IT IS THEREFORE ORDERED that Tiahrt's motion to remand **[ECF No. 8] is DENIED**.

IT IS FURTHER OTHERED that defendants' motion to dismiss **[ECF No. 16] is GRANTED. This action is dismissed without prejudice to Tiahrt's ability to pursue her claims under the Labor Management Relations Act**.

The Clerk of Court is ordered to **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
March 7, 2023

---

[48] Though Aria argues that Tiahrt "cannot bring a direct claim" asserting breach of the union contract because she is not a party to it, ECF No. 16 at 11 n.3, I make no findings or conclusions as to whether there are any legally viable alternative paths for Tiahrt to pursue.